# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 03 2015, 10:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Frederick A. Turner
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert L. Walp,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 3, 2015

Court of Appeals Case No.
53A01-1409-CR-00409

Appeal from the Monroe Circuit Court
The Honorable Kenneth G. Todd, Judge
Cause No. 53C03-1305-FA-00497

**Bailey, Judge.**

# Case Summary

Robert L. Walp ("Walp") appeals his convictions for three counts of Attempted Murder, Class A felonies.[1] He presents the sole issue of whether the evidence is insufficient to support his convictions because the State failed to prove that he acted with specific intent to kill. We affirm.

# Facts and Procedural History

During the morning of May 14, 2013, Michael Patton ("Patton") was doing yard work when Walp moved his lawn mower into Patton's path. Patton stopped work and the two men engaged in a lengthy conversation. At some point, Walp began to share his belief that their mutual neighbors, John and Kimberly McGuire and their children (collectively, "the McGuires"), were part of a terrorist cell "hiding waiting to start to wreak havoc on our county and our town, county, city."[2] (Tr. 313.) Walp explained that he had, during the previous weekend, laid down in woods beside the McGuire property, and waited with a rifle to "pick them off like chickens when they started to go in the house." (Tr. 316.) Unable to see in the dark, Walp had temporarily abandoned

---

[1] Ind. Code §§ 35-41-5-1, 35-42-1-1. Pursuant to Indiana Code Section 35-41-5-1(a), the offense of Attempted Murder is now a Level 1 felony. We refer to the version of the Attempt statute in effect at the time of Walp's offenses.

[2] It appears that the McGuires occasionally butchered small livestock for food. At some point, Walp observed conduct that he determined to be "ritual sacrifice." (Tr. 387.) He ostensibly believed that the McGuires displayed sheep or goat skins for religious purposes and had cut the throat of animals to drink their blood.

his plan. However, he insisted to Patton that the McGuires were "going to die" and Walp would "take care of" the matter that evening or the next. (Tr. 317.)

[3] Patton told Walp that he had to finish his yard work and run errands. Once Walp was encouraged to leave, Patton and his wife, Christina, went to a nearby Indiana State Police post and reported Walp's threats. Patton then arranged for another neighbor to warn the McGuires of threats against them.

[4] The McGuires decided to follow through with plans to go to R.M.'s choir concert.[3] Around 6:15 that evening, the adults and one of their children were in the garage preparing to leave when John McGuire heard the approach of a large vehicle. John took a few steps out of the garage to investigate and saw Walp driving a large white dump truck with "Bob the Builder" spray painted on it. As the McGuires sought refuge in the house, Walp exited his vehicle and began shooting.

[5] Walp shot through a sliding glass door to the sunroom and stepped through the opening. Once inside the sunroom, he shot into the basement. He entered the main residence and re-appeared outside approximately one minute later. He then fired two shots into an upstairs window. John, having loaded his shotgun, called out to Walp that he had a gun. Walp got into his vehicle and left.

---

[3] R.M. is the eldest of the McGuire children.

Christina, who had observed Walp's actions from her bathroom window, called 9-1-1.

[6] The State charged Walp with three counts of Attempted Murder. At the conclusion of a jury trial, Walp was convicted as charged. On August 28, 2014, the trial court sentenced Walp to thirty years imprisonment on each count. The sentences are to be served concurrently, providing for an aggregate sentence of thirty years. Walp now appeals.

# Discussion and Decision

[7] Walp contends that the State failed to present sufficient evidence to sustain his convictions for Attempted Murder. According to Walp, the State was required to prove that he knew the house was occupied when shots were fired, and the State failed to do so.

[8] In order to convict Walp of Attempted Murder, the State was required to prove beyond a reasonable doubt that Walp, acting with the specific intent to commit murder, engaged in an overt act that constituted a substantial step toward the commission of the crime. *Davis v. State*, 558 N.E.2d 811, 812 (Ind. 1990). Walp does not deny that he committed the overt act of shooting into the McGuire residence. Rather, he claims the State failed to prove beyond a reasonable doubt that he intended to kill the McGuires as opposed to "shooting up their house." (Appellant's Br. at 7.)

[9] When reviewing the sufficiency of the evidence to support a conviction, we will consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id. The requisite intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Davis*, 558 N.E.2d at 812. Discharging a weapon in the direction of a victim is substantial evidence from which a jury can infer intent to kill. *Leon v. State*, 525 N.E.2d 331, 332 (Ind. 1988).

[10] Walp told his neighbor of his plan to kill the McGuire family, who Walp labelled terrorists. He claimed to have laid in wait to kill them on an earlier occasion, but his plan was foiled because of the family's late return and the darkness. On May 14, 2013, Walp took his shotgun and drove his dump truck to the McGuire residence. Walp exited his vehicle as the McGuires fled from the garage into the house. According to Christina, she had seen the McGuires run into the house and "Walp had fired the first shot into their residential door as it was closing." (Tr. 346.) This testimony would support an inference that Walp, like Christina, could see that the McGuires were fleeing.

[11] Kimberly also provided testimony from which a factfinder could infer that Walp had tracked her movements. She testified that, at one point, she ran upstairs to lock a door and "that's when the shots started firing up at me through that upstairs." (Tr. 278.) She had seen Walp looking up and his eyes were pointed in her "general direction." (Tr. 287.) After the shooting, Walp

explained his conduct and motivation to police officers. He claimed to have "shot those people" because he disagreed with the lack of police response to terrorists. (Tr. 376.) He explained to Detective Jennifer Allen that he had loaded his shotgun with "six in a magazine and one [in] the chamber" and gone to the McGuire property with the desire to "blow them away." (Tr. 386-87.)

[12] Considering Walp's conduct and statements before, during, and after the shooting, there is sufficient evidence from which the jury could infer that Walp intended to kill the three victims and not just cause property damage when he fired multiple shots into the residence.

[13] Affirmed.

Riley, J., and Barnes, J., concur.